UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

    Plaintiff,　　　　　　　　　　　　　Case No. 17-20617

v.　　　　　　　　　　　　　　　　　　　Hon. Mark A. Goldsmith

JAQUANE SMITH,

    Defendant.
_____/

**GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

### I.　INTRODUCTION

On August 20, 2017, DPD officers on routine patrol in a high-crime area observed Jaquane Smith and another man standing in the street. When the officers pulled alongside the men to ask them to move, they observed an unmistakable bulge in Smith's pocket, and saw Smith turn his body away from them so as to conceal the pocket. When one of the officers later frisked Smith, he found a handgun in the pocket. Smith now seeks to suppress the gun, arguing that its seizure was unlawful. Smith is incorrect as a matter of Sixth Circuit law. As a result of their observations, the officers had reasonable suspicion that Smith was engaged in criminal activity, and they also received consent from him to search his person. And, as the Sixth Circuit has explained, they were not required to ask Smith whether he possessed a

concealed pistol ("CPL") license prior to frisking him.

## II.   FACTUAL BACKGROUND

On August 20, 2017, at about 10:45 PM, DPD Officers Quinton Jackson, Xiong Vang, and Matthew Morrison were on routine patrol in the area of Brentwood and Packard Streets in Detroit, Michigan. (Hearing Transcript 1, ECF No. 20, at 11:6–19). That area is a high-crime area with many vacant houses and "known to have a lot of drug problems." (*Id.* at 61:7–10). Jackson had previously made a firearm arrest there, and the officers had, earlier in the night, had a suspect flee during a stop in that area (*Id.* at 59:13–16; 61:9–10). As the officers traveled west down Brentwood, they saw a pickup truck parked away from the curb on the north side of Brentwood (to the right of the police cruiser), near the intersection of Brentwood and Rogge Streets. (*Id.* at 11:21–12:6). They saw two individuals, one of whom was Smith, standing toward the middle of the street at the driver's side door of the pickup truck, and another man in the driver's seat of the truck. (*Id.*).

The officers pulled up alongside the truck, and Jackson—who was seated in the front passenger seat of the cruiser—informed the men that they could not be standing in the road. (*Id.* at 14:7–15; 63:9–24). The street was lit by streetlights in the immediate area, and the officers could easily see from the squad car to the curb.

(*Id.* at 12:19–13:7; 60:14–23). As the conversation initiated, Smith was facing toward the officers, but both Jackson and Vang (who was seated in the rear passenger-side seat of the cruiser) noticed Smith blade his body away from the officers, pressing his right side up against the truck. (*Id.* at 14:6–9; 67:12–68:12). Immediately as Smith moved, both Jackson and Vang noticed an L-shaped bulge in the right-side cargo pocket of the shorts that Smith was wearing. (*Id.* at 18:9–19:10; 67:12–68:21). Both officers immediately recognized the bulge as a gun by its shape. (*Id.*). Further, as Smith turned, both officers noticed the bulge make a swinging motion, consistent with a weighted object like a firearm. (*Id.*). The officers also noticed that Smith was trying to hide his right side, and he appeared to be "very uncomfortable" during the conversation. (*Id.* at 19:9–20:3; 68:11). To confirm his suspicion, Jackson shined his flashlight on Smith, who then "turned even more away from [the officers]," raising more suspicion. (*Id.* at 69:16–21). The entire time, the officers were only about five feet away from Smith. (*Id.* at 15:12–14; 64:8–13).[1]

As the conversation proceeded, Jackson asked the men whether they had any

---

[1] Jackson also noticed that the man seated in the truck—Ricardo Young—would not keep his hands visible during the conversation, despite Jackson's repeated requests, further raising Jackson's suspicion. (*Id.* at 65:23–66:16).

3

weapons, and the men responded that they did not. (*Id.* at 20:20–21:1; 66:21–25). Jackson then asked them if the officers could search, and the men said yes.[2] (*Id.* at 21:2–4; 67:1–10). The officers exited the car and ordered the men to show their hands. (*Id.* at 69:25–70:5). Vang approached Smith, and Smith continued to avoid contact, "step[ping] aside" to "give us . . . an opening to talk to the [other] two men." (*Id.* at 23:13–15). Vang then frisked the area of the L-shaped bulge that he and Jackson had noticed, and recognized that it was a firearm. (*Id.* at 24:4–17). He reached in the cargo pocket and recovered a Smith & Wesson Model 60 revolver, loaded with four live rounds. (*Id.* at 24:18–25:22). Vang and Morrison then placed Smith into handcuffs, and Morrison asked him whether he had a CPL. (Hearing Transcript 1, ECF No. 21, at 55:4–56:3). Smith said that he did not, and the officers placed him under arrest for carrying a concealed weapon without a license. (*Id.*).

### III. ARGUMENT

**A. The officers had reasonable suspicion to believe that Smith was engaged in criminal activity when they saw him carrying a gun in his pocket.**

Based on the totality of the circumstances, the officers had reasonable

---

[2] Jackson recalled that Smith said "you can go ahead and check the car." (*Id.* at 67:7–8).

4

suspicion to believe that Smith possessed a firearm and was engaged in criminal activity. And, contrary to Smith's argument, the officers were not required to ask Smith whether he had a CPL prior to frisking him.

1. **Legal Standard**

"An officer can stop and briefly detain a person when the 'officer has reasonable, articulable suspicion that [a] person has been, is, or is about to be engaged in criminal activity.'" *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010) (alteration in original) (quoting *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007)). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). The officer need only "articulate some minimal level of objective justification for making the stop, based upon specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Smith*, 594 F.3d at 537 (internal quotation marks and citation omitted).

2. **Analysis**

### A. The officers had reasonable suspicion to believe that Smith possessed a firearm.

As the officers testified, Smith consented to being searched. But even without that consent, when considering the totality of the circumstances, the officers had reasonable suspicion to believe Smith had a gun, and thus stop him to investigate. At least eight facts support this conclusion:

- When the officers approached, Smith bladed his body away from them. *See, e.g.*, *United States v. Johnson*, 336 F. App'x 554 (6th Cir. 2009) (finding that officers had reasonable suspicion where suspect appeared nervous and also "bladed" his body away from officer to protect a hidden firearm); *United States v. Ruffin*, No. 16-20045, 2016 WL 2642046, at *2 (E.D. Mich. May 10, 2016).

- During the conversation, Smith pressed his right side (where the gun was) against the truck, attempting to conceal it. *See, e.g.*, *United States v. Jones*, 562 F.3d 768, 776 (6th Cir. 2009) (furtive motions to conceal firearm contribute to reasonable suspicion).

- The officers noticed an L-shaped bulge, which they recognized to be a firearm. *See, e.g.*, *id.*; *United States v. Bell*, 572 F. App'x 417, 419 (6th Cir. 2014) ("The officer's belief, based on his eyewitness observations, that the defendant had a bulge in his pocket that was in the shape of a gun provides 'reasonable suspicion' under the *Terry* doctrine that the defendant was carrying a concealed pistol.").

- The officers noticed the bulge make a swinging motion in Smith's pocket, consistent with a weighted object like a firearm. *See, e.g.*, *United States v. Jackson*, 490 F. App'x 707, 708 (6th Cir. 2012) (similar).

6

- When Vang approached Smith to frisk him, Smith stepped aside, as if to avoid being searched.  *See, e.g.*, *United States v. Pearce*, 531 F.3d 374, 382 (6th Cir. 2008) (defendant "backing away" from officer to avoid contact contributed to reasonable suspicion).

- The incident occurred in a high-crime area.  *See United States v. Frazier*, 249 F. App'x 396, 402-03 (6th Cir. 2007) ("[A]n individual's presence in a high crime area, when coupled with . . . nervousness, viewed together" may give rise to reasonable suspicion).

- The officers noticed Smith's facial features and demeanor to be uncomfortable and suspicious.  *See id.*

- The incident occurred at night.  See *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (the "late hour may contribute to reasonable suspicion").

In the end, the officers need only to be "able to articulate some *minimal* level of objective justification for making the stop, based upon specific reasonable inferences which [they are] entitled to draw from the facts in light of [their] experience." *Smith*, 594 F.3d at 537 (emphasis added).  And Jackson and Vang had substantial experience in this area, having collectively made over 100 firearm arrests in the year prior, most of which involved recognizing a gun in a pocket, as in this case. (Hearing Transcript 1, ECF No. 21, at 7:15–8:6; 57:3–19).  The officers had reasonable suspicion that Smith possessed a gun and was thus engaged in criminal activity.

7

### B. The officers were not required to ask whether Smith possessed a CPL before frisking him.

In his initial brief, Smith argued that the officers did not have reasonable suspicion that Smith was engaged in criminal activity prior to frisking him because they did not know whether he had a CPL. The Sixth Circuit has held to the contrary in multiple cases. In *United States v. Galaviz*, officers responded to a 911 call regarding an armed robbery, and observed a handgun under the front seat of a car at the defendant's residence. 645 F.3d 347, 350–52 (6th Cir. 2011). Without securing a warrant, they forced the car unlocked and recovered the gun. *Id.* The Sixth Circuit found that the seizure of the gun was valid under the plain-view exception to the warrant requirement. *Id.* at 354–57. The court squarely addressed the very argument that Smith makes in this case, citing Michigan's law placing the burden of establishing a concealed pistol license on the defendant:

> If officers were able to clearly identify the object protruding from beneath the driver's-side seat as part of a handgun, then this prong of the plain-view test is satisfied. In Michigan, it is a crime to carry a pistol in a vehicle without a firearm license. Mich. Comp. Laws § 750.227; see also Mich. Comp. Laws § 776.20 (placing burden of establishing possession of license on the defendant). Therefore, the incriminating nature of a handgun in the vehicle was immediately apparent.

*Id.* at 356 (citations omitted).

Later, in *United States v. Williams*, the Sixth Circuit reaffirmed this reasoning. There, police received a tip from an informant that the driver of a particular car "had a handgun on him." 483 F. App'x 21, 23 (6th Cir. 2012). Acting on that tip, officers stopped the car and seized a handgun. *Id.* The court held that the seizure was lawful, explaining that "Michigan statutes make it a crime to carry a pistol" in a car without a license and "the individual has the burden of demonstrating that he has a license to carry the pistol." *Id.* Thus, "merely showing that a defendant carried a pistol in a vehicle he owns or operates establishes a prima facie violation of state law; at that point, it is up to the defendant to raise the issue of licensure and offer proof that his possession was lawful." *Id.*[3]

The same reasoning applies here. As soon as Officers Vang and Jackson identified that Smith possessed a concealed pistol, its incriminating nature under

---

[3] Smith relies heavily on *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128 (6th Cir. 2015), a § 1983 case involving an individual who was open-carrying a pistol in Ohio. That case is inapposite because Ohio law "does not require gun owners to produce or even carry their licenses for inquiring officers." *Id.* at 1131. *See United States v. Lamb*, No. 16-20077, 2016 WL 4249193, at *3 (E.D. Mich. July 6, 2016), report and recommendation adopted, No. 16-20077, 2016 WL 4191758 (E.D. Mich. Aug. 9, 2016) (rejecting identical argument because "Michigan law regarding carrying a firearm in a car is not on all-fours with *Northrup*'s description of the Ohio law that absolves those openly carrying a firearm from having to produce a license to do so.").

M.C.L. § 750.227(2) was apparent. As in *Galaviz*, the officers were not required to presume that Smith had a concealed pistol license because Michigan law places the burden on him, not the officers, to establish possession of a license.[4]

## IV. CONCLUSION

Smith's motion should be denied.

Respectfully submitted,

DANIEL L. LEMISCH
Acting United States Attorney

*s/John B. Meixner Jr.*
John B. Meixner Jr.
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9626
john.meixner@usdoj.gov

Dated: March 12, 2018

---

[4] Smith also briefly argues that the officers lacked reasonable suspicion to believe that Smith was armed and dangerous, and accordingly did not have a lawful basis to frisk him. To the contrary, the Sixth Circuit has routinely held that, in circumstances where law enforcement officers have a reasonable suspicion that an individual is concealing a firearm, they have reasonable suspicion to believe that the individual is armed and dangerous, and may accordingly frisk that individual for weapons. *See, e.g.*, *United States v. McDaniel* 371 F. App'x 617, 621 (6th Cir. 2010) (frisk justified because the officer "believed, based on his experience, that Defendant's behavior was consistent with an attempt to conceal a weapon"); *Bell*, 572 F. App'x at 419 (6th Cir. 2014) ("The suspicion that the defendant had a pistol in his pocket completes the basis for the frisk and makes it reasonable.").

10

## **CERTIFICATE OF SERVICE**

I certify that on March 12, 2018, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following:

>Jonathan Epstein
>Michael Carter
>
>Attorneys for the Defendant

>*s/John B. Meixner Jr.*
>John B. Meixner Jr.
>Assistant United States Attorney
>211 W. Fort St., Suite 2001
>Detroit, MI  48226
>(313) 226-9626
>john.meixner@usdoj.gov

11